We have one case before us for argument this afternoon. That case is 18-2390 Hyatt v. Stewart. Mr. Grossman, you have referred three minutes of your time for rebuttal. Is that correct? Yes, Your Honor. All right. Good afternoon, Your Honors. May it please the Court, Andrew Grossman, for the appellate, Gilbert Hyatt. Mr. Grossman, the way I see it, you have three problems. First is our last opinion, Hyatt 2, and that the District Court, in its opinion, strove to follow it and to apply it and articulates how the Court's doing that. Second, the District Court's multiple determinations that Mr. Hyatt's testimony was not credible, for example, at page 28, but it's throughout his opinion. And third, the briefing before this Court, which contains multiple misrepresentations and misquotes. And that's where I want to go. I'm just going to ask you, not a lot about that, but I'm not happy about it. On pages 12 and 13 of your blue brief, you quote the District Court ruling in favor of the PTO on license. And you say the District Court emphasized that the PTO fell well short of how this Court believes, I'm quoting, government agencies should engage with zealous members of the public who seek to vindicate their rights. That's not what the District Court emphasized in Hyatt 3. That was Hyatt 3 talking about what it once said in Hyatt 1, which this Court reversed. What the District Court did say in 2024 was that no other result than judgment for the PTO is even colorable. And when you drop that kind of language and say that the Court once castigated the PTO for its chutzpah and don't say that was before you reversed it, I think you're trying to mislead the Court. Second, on page 26 of the opening brief, you selectively quote Overland Motor. Why do you selectively quote from it? Here's the quote, but what you omitted is what I'm going to emphasize. During the pendency of the application in this case, the period allowed was one year. We do not know on what principle we could apply the equitable doctrine of abandonment by latches in a case where the measure of reasonable promptness is fixed by the statute, comma, and then you left off, and no other ground appears by reason of which latches could be imputed to the applicant. On page 10 of the reply brief, and on 22 and 23 of opening brief, you offer a perspective on Woodbridge, which the PTO disputes. Why did you argue Woodbridge is more limited than the actual holding? And again, I'm going to read what you said and what you left out. You said, quote, Woodbridge held that an applicant was not entitled to issuance of a patent under a special bill, close quote, and Woodbridge was supposedly limited by the Supreme Court in Overland Motors a few years later to the conclusion that the applicant's intentional delay was quote, a breach of the condition upon which he might avail himself of the special congressional privilege granted him in special legislation. What you leave out of the quote from Overland Motors is that before it said Woodbridge held that the delay of nine years for the avowed, that Woodbridge quote, held that the delay of nine years for the avowed purpose of postponing the period of the monopoly was latches and a breach of the condition. You left that part out.  All of those things, I believe, attempt to mislead the court. Your Honor, we certainly did not attempt to mislead the court. We quoted the materials. We cited the appropriate pages. With respect to Overland Motors, I think the decision strongly supports our position regarding the availability of latches in this case. The reference to other circumstances was a reference to the other types of circumstances where there were not congressionally enacted deadlines that might support an application of latches. I think if you look at that paragraph and the preceding paragraph of Overland Motors, that's abundantly clear where the court discusses the context in which latches might apply. Did you think I would not look at it? Do you think we don't read those cases? Of course I believe you read those cases, Your Honor, which is why I think that our quotation from Overland Motors is a perfectly accurate and correct quotation of that and actually is not misleading in any respect. Because I think that taken in context, that is what the case stands for. It stands for the proposition that where Congress has fixed the period to act, that the court cannot override that by application of latches. And that was not a new principle that the court applied in Overland Motors. As that decision recounts, it's something that the court had stated repeatedly going back all the way to the Bell case. And it's something that the US Supreme Court has said more recently in SDA Hygiene and Petrella. That is our fundamental argument on this appeal, that Congress has fixed the time to act with respect to every piece of prosecution conduct. And where Congress has done that, there is simply no room for latches. That is the core holding of SDA Hygiene and Petrella. And it's something that's reflected. And your citation to Hyatt 1 without saying that Hyatt 3 was exactly different and the court said so? Your Honor, the court, I think the district court quoted its own views for a reason. And I don't think we hid or that it's any surprise to this Court what the ultimate result of the district court's opinion was on remand. I mean, we certainly did not hide the ball on that. You just dropped the language. Your Honor, we did not quote every single piece of the opinion in our brief. You didn't quote every single piece of the sentence in your brief. Your Honor, we were not trying to mislead the Court. And I think that we made perfectly clear the overall thrust of the district court's opinion. And certainly the result is true. You had to since he ruled against you directly. Pardon? You had to since he ruled against you. You're appealing his decision. Yes, Your Honor. As I said, we were not hiding the ball on that. And we did recount the Court's reasoning in support of that decision. Well, this judge thinks it's misleading. Well, I apologize for that, Your Honor. But I think that I respectfully disagree that we engaged in any misleading quotation of the opinion. Or certainly a decision like Overland Motors. And certainly not our discussion with respect to Woodbridge. Again, Overland Motors, that final paragraph. Let's go to the merits. Yes, Your Honor. As I said, our core argument on this appeal is simply that Symbol is no longer good law. Symbol reasoned that the Act incorporates a prosecution laches defense based on the lack of any legislative history to the contrary. Subsequent to Symbol, the Supreme Court made clear in Petrola and Essia Hygiene that there is a required threshold inquiry when a court is going to apply laches to a statutory scheme, which is, is there a timing gap with respect to a particular action in that statutory scheme? This Court in Symbol did not undertake that inquiry. In fact, it rejected that proposition when the patent holder in that case proposed that, in fact, Congress had filled the gap by prescribing the timing of continuing applications. Not only that, but the reasoning that was applied by Symbol is precisely identical to the ruling of this en banc court in the Essia Hygiene decision that the Supreme Court overruled, adopting instead this gap-based approach that avoids overriding the timing provisions that have been enacted by Congress. So we think it's crystal clear that Symbol is no longer good law and that the Court is required to undertake the mode of analysis that's required by Essia Hygiene and by Petrola. And that's a very straightforward analysis in this instance. The Court simply asks, are there any timing gaps with respect to the prosecution of patent applications? As we described in our brief, there simply are not any. Congress has prescribed the timing for every single step that an applicant is authorized to take. The PTO's response has actually not disputed that point. The PTO instead has raised the exact manner of argument that was rejected by the Supreme Court in both Essia Hygiene and Petrola, that there is no time limit with respect to what it calls overall delay. In Petrola, for example, the copyright holder in that case had delayed 18 years before bringing the infringement claims that were at issue. The argument was made, and was embraced in fact by the dissent, that there was no time limit that prevented a copyright holder from doing that, and that therefore provided a gap for lapses. The Court rejected that out of hand, stating that where Congress had conferred the right to bring suit at a particular period in time, that was a right that was authorized by statute, and it was something that therefore the Court could not override via application of laches. The same argument was broached in Essia Hygiene with respect to its similarly rolling statute of limitations. Your argument is that Hygiene and Petrola overrule symbol? Implicitly overrule, Your Honor, although I think it might even be explicitly overrule, given that this Court's decision in Essia Hygiene embraced the exact same reasoning as symbol. What about the notion that it was well established enough at the time of the 52 Paddack that we should assume that Congress intended to carry forth prosecution of stop fault in the statute? Well, Your Honor, I think that a couple of responses to that. The first would simply be that, you know, that is exactly what the Court had, you know, the view that the Court had in Essia Hygiene in the Enbach decision, and Your Honor's dissent, of course. Well, sure, I understand that. And if the Supreme Court had been consistent in that application and said, nothing can be carried forward, that would be fine, but then we have Minerva, which is the Assigner Estoppel case where they did find a prior common law doctrine was incorporated in the 52 Act. So it seems to me that it's not just we can look at the reasoning in Essia and Petrola to get rid of prosecution latches, but we have to look at that separate question of was prosecution Estoppel well enough established prior to the 52 Act that we should assume that Congress intended to incorporate it? And I don't know the answer to that question. I think that's what is problematic for you in terms of getting us to do something about Signal without an Enbach hearing. I understand, Your Honor, and I think that Essia Hygiene and Petrola speak to that directly and that they actually go hand in hand with Minerva. So Minerva says that the Court should assume that Congress legislates against prevailing background principles of common law and, in some cases, equity. Here, as the Supreme Court made clear in Essia Hygiene and Petrola, the background principle is that latches only applies where there is a statutory timing gap. The Court could not possibly have been more clear about that. And that is plain on the face of the historic cases applying latches doctrine to patent prosecution. I mean, they all apply in instances to things like copying for interferences and filing of divisionals for which the statute at the time did not prescribe any sort of timing limitation. In other words, there was no authorized time to act, and so the courts had to use latches to borrow a presumptive time limit. So, I mean, that describes pretty much every single one of the historic prosecution latches cases. So the background principle of law that is relevant under Minerva is exactly the one that was described in Essia Hygiene and Petrola, which is that prosecution latches cannot apply, and both as a doctrinal matter and a separation of powers matter, where Congress has provided a right to act within a certain period of time. We think Minerva really supports us very strongly on that, particularly the second pivot of the decision, where the Court said, yes, a signer estoppel is a well-recognized background principle of law. We accept that. But you have to apply that doctrine according to its terms. And so the Court cut back this Court's decision, broadening the scope of that doctrine beyond what had been historically recognized. We think the mistake here in Simbel is effectively the same, and Essia Hygiene and Petrola tells you how to cut back that doctrine. In other words, you need that required first step of determining, is there a gap, a timing gap in the statute? And that's something that Simbel, of course, not only didn't consider, but affirmatively rejected. So we're very comfortable with Minerva, and we think that it actually compels the result that we're looking for. So we would not be able to overturn Simbel, you realize that? Your Honor, we believe that under Troy that... Only a non-bond court would be able to do that. The Court was very clear in Troy v. Sampson and subsequent cases that where a subsequent Supreme Court case has undercut the reasoning or adopted a different mode of analysis than a prior panel opinion, then a subsequent panel may reconsider that without going en banc. That's what the Court did in Troy. And respectfully, we think that this case is even more, is even less of a question than it was in Troy. Troy was a case that came after... I mean, I understand your argument, but the problem for you is we wouldn't even do it in SCA, which was much closer to Petrillo than this case is. So if we weren't going to do it in SCA as a panel, I think you're going to find it very unlikely that we're going to do it here as a panel because prosecution latches is not the same kind of latches that was at issue in both Petrillo and SCA. And those two were really basically the same. Well, Your Honor, respectfully, two responses to that. One is, as I noted, the Supreme Court's decision overturning this Court's en banc decision, it rejected the exact same reasoning that the Court applied in Simbel. So, I mean, that really is kind of on all fours. And the second thing is the Court has never drawn a distinction in terms of doctrine between latches, litigation latches and prosecution latches. It's one doctrine. All of this Court's recent modern prosecution latches decisions all draw their standard for latches from A.C. Aukerman. In fact, the Court's earlier decision in this case drew its standard from Aukerman, and the only citation of SCA hygiene was to note that it had overruled Aukerman. So, I mean, it's right there on the face of the opinion. I mean, we're dealing with the same doctrine. Do you want to address the district court's ruling? I'm certainly happy to address that if you have any particular questions regarding it, but otherwise we would stand on our reasons. It's your appeal. If you have nothing to say, then that's okay with us. All right. I mean, you know, as I said, I think the mode of analysis here is relatively straightforward, which is simply that SCA hygiene and Petrella have conclusively rejected and overruled the reasoning of Symbol. This Court, this panel, has the authority to recognize as much and is bound by those decisions. And applying the mode of analysis that's required by SCA hygiene and Petrella is incredibly straightforward and dictates the result in this appeal. If the Court has no further questions, I'll resume. We have a little bit. I'll give you a couple of minutes more time if you need it because we took up some of your time. So is that it? If the Court has no further questions at this time, I'll just reserve the balance.  Thank you, Your Honor. Thank you. Counselor Richards? Yes, Your Honor. Okay, you may proceed. Thank you, Your Honor. May it please the Court. This Court's prior decision held that the USPTO had shifted the burden to Mr. Hyatt to overcome the USPTO's evidence of prosecution latches. On remand, the District Court held that the evidence compelled a singular result, judgment for the USPTO. On appeal, Mr. Hyatt does not specifically dispute the District Court's findings or conclusions. Accordingly, it is now undisputed that Mr. Hyatt pursued an array of practices which resulted in delay in his applications. It is undisputed that Mr. Hyatt caused prejudice to the USPTO and the public, and it is undisputed that Mr. Hyatt's conduct amounted to an abuse. What's your view on the applicability of SCA hygiene and Petrello? Our view is that SCA hygiene and Petrello would not apply because there is no fixed time limitation on patent examinations set out in the 1952 Act. I think that's clear by looking at SCA hygiene and Petrello themselves. Generally, as Your Honor noted earlier, Congress is presumed to act against the backdrop of the common law and has to speak directly to the common law doctrine if they're going to abrogate it. In SCA hygiene and Petrello, litigation latches, deals with unreasonable delay in filing suit, and statutes of limitations speak directly to whether a time period is reasonable before a party files suit. So here we're dealing with prosecution latches. This is unreasonable and unexplained delay in patent prosecution that causes prejudice and that puts off the public enjoyment of the invention. And so that renders this a different doctrine than litigation latches. Litigation latches protects a particular party from an unreasonable delay in filing suit. Sure, but all the actions he's taken in these continuations and whatever, I know, I've seen that document, the fold-out document. There's a lot going on here. But none of them were inconsistent with the statutes, were they? So, no, Your Honor, but that question was already resolved in this court's prior decision. No, I understand, but we're asking the bigger question here now. I mean, I think we're bound by Signal. This has got to go on bonk if we're going to reconsider it, but he's just spent his entire time arguing why essentially Signal was inconsistent with SCA and Petrillo, and I want to hear the office's views on that. And it does seem to me that it's a harder question than SCA, but it's still a question, isn't it? Do you agree that the proper analysis is that we need to determine whether this common law doctrine was so well established by the 52 Act that it survived the enactment of the 52 Act? No, Your Honor. Why not? Because that's what the Supreme Court did in Minerva with Assignore Estoppel. So, yes, Your Honor, but, well, not exactly, Your Honor. In Minerva, the Supreme Court first looked at the statute that the party had cited as allegedly abrogating Assignore Estoppel and determined that that statutory language did not, in fact, address Assignore Estoppel and that the language, in fact, that the party argued was abrogating Assignore Estoppel, it coexisted with the Supreme Court decisions that recognized Assignore Estoppel. And so in this particular case with prosecution latches, most of the practices that Mr. Hyatt points to as regulating patent examinations similarly coexisted with prosecution latches, and most of them were statutory at the time that Woodbridge and Webster were decided as well. Applicant response time was in revised statutes 4894 by 1870. The time period for paying the issue fee was in revised statutes 4885 by 1870. And the 102B, what became the 102B bar, was in revised statutes 4886 by 1897. So when Woodbridge was decided in 1923 and Webster in 1924, those practices were already part of the statutory scheme there. And so Congress's carrying forward of those specific practices can't be seen as abrogating prosecution latches. The only doctrine that Mr. Hyatt cites that was not codified, that was not statutory at the time, is copendency, but that was an existing practice. It goes back to 1864, Godfrey v. Eames, which this court recognized in transco, and the purpose of codifying copendency in 120 and 121 was simply to recognize the existing procedural rights that applicants have. So each of the practices that Mr. Hyatt argues abrogated prosecution latches in fact coexisted and were part of the legal landscape when these cases, Woodbridge and Webster recognizing prosecution latches, were decided. Now Mr. Hyatt's response to that is that part of the legal landscape also was that when Congress has prescribed timing, then latches can't apply. And he cites his source cases for that are Overland Motor and American Bell. And so Judge Walke, Your Honor, recognized that Overland Motor is not so limited and recognizes that when there is a statute that sets forth timing, there may be other circumstances which nevertheless lead to a finding of latches. And going back to American Bell, based on Mr. Hyatt's argumentation of American Bell, one might expect that that case looked at whether the applicant had complied with the statute, said he did, and then that was that. But that's not how that case resolved itself. The Supreme Court did say about what Mr. Hyatt quotes about complying with a statute, but then it went and looked at who was responsible for the delay. And it said that if the applicant's conduct has been wrongful, it may and ought to suffer that if the applicant is responsible for the delay, notwithstanding the statute, that they still can forfeit their patent. That's at 167 U.S. 251. And then later says that the applicant can lose its right if the delay was through his inducement. That's 167 U.S. 263. So the cases that Mr. Hyatt cites for this proposition that there can't be latches where there is timing isn't supported. It goes back all the way to American Bell that you can potentially have latches in those circumstances, and the Supreme Court stepped through the government's evidence in that case to see whether the applicant was responsible for the delay there. So you're saying we should read Petrillo and SCA as confined to simply not being able to use latches to evade a congressionally mandated statute of limitations, that it shouldn't, that kind of principle that when Congress is enacted to set time limitations, shouldn't apply beyond bringing a case in court? I think that those are certainly the facts of SCA Hygiene and Petrillo. Oh, I know, but that's the question is, are they confined to their facts or is that a general principle? It seems to me that the general principle is that when Congress has specified a time period for doing something that they're entitled to do, that the court shouldn't impose another separate equitable judicially created remedy to alter that time period. And why is that confined only to statute of limitations to bring in action, rather than otherwise time periods for doing something at the agencies? Well, I think, Your Honor, that part of the reason that SCA Hygiene, I understand Your Honor's point about the general principle there, but I think part of the reason that those cases turned out the way they did was the specificity of the statutes and how they spoke directly to the litigation latches question. And so I think as a matter of principle, that can apply beyond just the facts of a statute of limitations. So if you have a time period for bringing, for instance, a challenge to an IPR or something like that, or bring an IPR, the courts can't step in and say, well, we can't step in and say, well, even if they missed that time period, there was some equitable reason. Or even if they met that time period, there was some equitable reason that we think they should be stopped from pursuing that IPR because Congress has set that time period for bringing that administrative action. That seems like we couldn't interpose latches there to alter the time period, right? I know you don't want to answer it. Just assume it's a hypothetical. I'm not going to hold you to it. So I think the office would agree that as far as the IPR statute goes, that's correct, that an equitable doctrine. But that's distinguishable in a couple of ways. Your point here is that what he's referring to aren't specific time periods to do anything. It's just that there aren't time periods in the statutes for continuations and stuff like that, in the sense that there are in SCA and Petrillo. And so there's nothing to displace prosecution latches. Yes, exactly, Your Honor. And a number of the practices pursued, I guess first, this court's prior decision in 2021 resolved the question whether simply complying with the statute was sufficient to avoid prosecution latches. And the court said that it was not. I mean, the problem with that argument is that's not what we seem to rely on and signal. For the reason that latches could go forward. What we seem to rely on signal was the exact reasoning that was rejected by SCA, which was it was around prior to the 52 Act and we see nothing in the 52 Act that displaced it. And I think that's problematic. But I think the facts of SCA matter to how that turned out in the sense that. Right. But if that was the argument that that prosecution latches was different than litigation latches, as I guess we're calling it, you would have thought that would have been in signal, but it wasn't. It was the same precise reasoning that was used in signal to carry forth prosecution latches, was the reasoning the Supreme Court rejected in SCA. No, Your Honor, I don't agree with that. Simple one. I mean, it's pretty clear, or at least the dissent says that's what they're doing. They're saying, I mean, I think let's just assume that's what it is. I don't want to get into it. We can all read that case. But I didn't see anything in signal that said, well, this is just there aren't any time periods that could be the basis for latches. They're just saying we've had latches since these cases from the 20s. You know, we're going to keep applying it. We don't see anything in the 52 Patent Act that displaced it. And Judge Newman, in dissent, said that the Patent Act did displace it. That's the precise question that was at the heart of SCA, too. And the Supreme Court went the other way on it. Well, but that turned on different statutes. I know, but the problem is, and maybe I'm not making myself clear, neither of the signal case did not turn on the differences in those statutes. The signal case turned on the fact that it had been around for a long time and nothing in the 52 Act displaced it, not on the specific differences in the statute. And so to get to the differences in the statute, I think, is a different rationale for finding no prosecution, So I think the difference between the statutes that were— I take Your Honor's point about the perceived commonalities. But what matters, I think, there was that 286 had the unless otherwise provided by law provision, as Your Honor is well aware. And so that led to the analysis about whether latches could displace the statute of limitations claim for damages. And so although it did have the same general method of analysis about an existing common law doctrine, I mean, that's the method of analysis that the Supreme Court applied in Minerva as well, that the case turned out— Sure, Minerva's pretty helpful for you, I think. Yes, Your Honor, we agree. And so I think that— Minerva makes this case very hard because otherwise, I think, SCA helps them an awful lot. None of this is going to happen at this panel. But, you know, this is a very interesting case. And to me, it comes down to a couple of different questions. And one of them is, is the time period at issue here similar enough to the kind of time periods in SCA and Petrillo that latches shouldn't apply? And two, how do we look at the basically incorporation by the Patent Act question, which came out differently in Minerva and SCA? Okay, so to take those questions on. So whether the—I guess how to approach the difference in whether in the incorporation— Look, I understand you made your arguments on the differences. You don't have to repeat it. SCA and Petrillo are very easy. You know, they have a time period for bringing a copyright case or a patent case. And the Supreme Court said, well, you can't use latches to displace that one time period. The question is, how far does that reasoning extend? Because here we have statutes that allow all of the action undertaken by Mr. Hyatt in prosecuting his patents. He didn't do anything that violated a statute or a statutory time period. And Congress has said all of those. So should we allow courts to interpose an equitable doctrine to alter that? It's far removed from Petrillo in some ways, in some ways not. And your argument is it's too different. Yes, Your Honor, because whereas SCA, Hyatt, and Petrillo dealt with a statute of limitations for a particular action. But what's your support for the fact that it can't be extended beyond that? Besides just saying, well, they're different, that this was simpler. Because the logic behind them seems like it could apply similarly. Sorry, I take it up a lot of your time. So do we need to get into this? Doesn't the law of the case apply here? Yes, Your Honor. Our position is that the law of the case applies here. Your Honor didn't have any questions about that for Mr. Grossman. I want to back you up to the beginning of Judge Hughes' second colloquy with you. Yes. When he asked a general question about equity as opposed to prosecution latches, or when he was talking about the cases he was discussing. And that is, you're not abandoning equity in those situations. For example, if the office discovers fraud, it still can apply an equitable remedy. Yes, Your Honor. OK. Judge Ray, may I have leave to? Because your answer was yes, and I didn't. I may have misspoke, Your Honor. Do you have any other questions? May I have leave to briefly attempt to resume? No, you have time. OK. Well, then we'd respectfully request that this court affirm the judgment of the district court. Thank you. Mr. Grossman, you have a little over two minutes. Thank you, Your Honor. I'd like to try and take another run at the issue as to whether or not simple is binding on the panel. With respect, you know, the court held in Troy v. Hansen that the issue decided by the Supreme Court Honestly, I would, if you want to spend your time on that, you can. But I'd actually be more interested in the answers to my two questions about, to them, about why this is similar enough to the statute of limitations in Petrella and SCA, and how we would apply that same incorporation doctrine that we looked at in Minerva. Because to me, that's the two questions we have to answer for this case, and whether it's done by the panel decision or a bonk is going to be made by the judges, not anything you're going to say. Your Honor, so on the first question, SCA Hydrogen and Petrella are very clear that they rest on two points. One is simply what SCA Hydrogen refers to as the office of latches. And the office of latches in the context of a statutory scheme is filling timing gaps. And the second is a separation of powers principle. And the court spells this out, that when Congress creates a right and gives somebody the time to exercise that right, the court is abrogating that right if it applies to an equitable doctrine. There's no timing gaps in the patent statutes covering examination and prosecution for latches to fill. We're saying that, but we're also saying something that's a little bit different but complementary to that, which is that Simbel fundamentally went wrong by not looking at this in sort of a gap-based way. And it created this monster of a doctrine that stands astride the Patent Act that just usurps every single provision regarding prosecution, from timing to questions of patentability. It's all in the bucket of equity where the statute regulates these things specifically. I mean, this court effectively recognized that, I think, in Simbel, too, where it recognized that application of the doctrine vitiates the act. That is, in fact, what it does. With respect to the incorporation issue, again, I think SCA Hydrogen and Petrolus speak to that because they tell you what the applicable doctrine was. And so in that respect, it's very much like Minerva, where, sure, is latches a background principle of law that theoretically might apply? You know, it's out there. That's something that Congress legislates against. But in this instance, you have to take latches as it comes. And that doctrine doesn't apply where Congress has said, you've got a right to do something in this particular period of time. So long as you're timely, you can exercise that right. In that instance, the doctrine has no application. And so there would simply be no room for prosecution latches under the statute. So we thank the Court and would ask the Court to reverse the District Court's judgment regarding latches and affirm regarding patentability. Thank you. Thank you, Counselor. We thank the parties for the argument. Let's just take the case under advisement. Thank you very much.